IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01722-PAB-STV

ELUID VILLARREAL,

    Plaintiff,

v.

WALMART, INC.,

    Defendant.

## ORDER

This matter is before the Court on Defendants' Partial Motion to Dismiss with Prejudice [Docket No. 35]. Plaintiff responded, Docket No. 39, to which defendant replied. Docket No. 40. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332.

## I. BACKGROUND[1]

Plaintiff, who suffers from hypoxia, diabetes, chronic obstructive pulmonary disease, and a hernia, worked for defendant for more than 24 years until August 2, 2019, when he was terminated. Docket No. 33 at 2, ¶¶ 5–6; *id.* at 10, ¶ 43. While at work, defendant suffered an incarcerated umbilical hernia, for which he required surgery; however, while on medical leave, he was notified that he was being replaced. *Id.* at 2, ¶¶ 7–8. When plaintiff returned to work, he had to use a wheelchair and

---

[1] The Court assumes that the allegations in plaintiff's amended complaint are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

oxygen, yet defendant reassigned plaintiff to another department and sent him home after learning that he was on medication. *Id.*, ¶ 9. Three days later, plaintiff complained to a human resources manager that "these actions were being taken against him for having been injured on the job and taking medical leave." *Id.* at 3, ¶ 10. Then, two weeks after complaining about discrimination, store manager Mike Hedges "forced" plaintiff to tour the store and would not end the tour despite being made aware that plaintiff was running low on oxygen. *Id.*, ¶ 11. As a result, plaintiff lost consciousness, fell out of his wheelchair, and had to drive himself to the hospital when defendant did not call an ambulance. *Id.* Though plaintiff received positive feedback and was informed that his department was the most profitable in the region, his 2017 performance review, rated him as "Development Needed." *Id.* at 3–4, ¶¶ 12–14. Plaintiff complained to Mr. Hedges that the review was discriminatory based on his disabilities and on-the-job injury. *Id.* at 4, ¶ 15.

     In April 2018, plaintiff was not permitted to leave work early despite running low on oxygen because he had already used his sick leave. *Id.*, ¶ 16. Then, plaintiff was written-up for having too many items out of stock, even though other managers were not written-up for the same issue. *Id.* at 4–5, ¶ 17. While plaintiff was authorized to hire additional employees for his department, the new hires were placed in another department, which plaintiff complained was discriminatory. *Id.* at 5, ¶¶ 18–19. When plaintiff complained, Mr. Hedges yelled at him in front of his co-workers. *Id.*, ¶ 19. After complaining another time, plaintiff was removed from managerial assignments, excluded from managerial meetings, excluded from trainings, had supervisors discuss

2

his medical conditions in front of co-workers, denied wheelchair access, and scheduled to work when he had requested time off for doctor's appointments.  *Id.*, ¶¶ 20–21.

On June 7, 2018, plaintiff filed an EEOC charge, alleging disability discrimination and retaliation and, just days later, was denied time off for a medical procedure, yelled at by Mr. Hedges, and excluded from departmental meetings.[2]  *Id.* at 6, ¶¶ 22–23.  The next day, plaintiff was told he would have to set up his department by 4:00 a.m., instead of the usual 9:00 a.m.  *Id.*, ¶ 24.  When plaintiff missed the deadline, Mr. Hedges yelled at him again, and plaintiff's attorney sent defendant a "cease and desist letter," citing the Americans with Disabilities Act ("ADA").  *Id.*, ¶ 26.  After plaintiff was denied time-off for July 3, for which he had previously been approved, he found his wheelchair unplugged and inoperable and was made to park his wheelchair in a mice-infested closet.  *Id.* at 7, ¶¶ 28–29.  After plaintiff was scheduled to work from 3:00 p.m to 3:00 a.m., his attorney sent another cease and desist letter, again citing the ADA, yet he was again excluded from meetings, assigned to trash duty, threatened to be sent "home permanently," and had his shifts changed.  *Id.*, ¶¶ 30–31.

After plaintiff again complained to Mr. Hedges about discrimination and retaliation, Mr. Hedges yelled in plaintiff's face for ten minutes and prevented plaintiff from leaving his office.  *Id.* at 8, ¶¶ 32–33.  Plaintiff was later investigated for texting co-

---

[2] Though plaintiff's complaint only mentions this EEOC charge, defendant asks the Court to consider additional EEOC charges that plaintiff filed.  Docket No. 35 at 4, ¶¶ 6–8; Docket Nos. 35-1, 35-2, 35-3.  Defendant explains that a court may take judicial notice of charges not identified in a plaintiff's complaint.  Docket No. 35 at 4 n.3.  As discussed below, plaintiff argues that, because exhaustion is an administrative defense and is not a jurisdictional bar to suit, it is improper to analyze the charges that might be necessary for defendant's affirmative defense on a motion to dismiss.  Docket No. 39 at 10–11.

3

workers, despite that being routinely done, assigned an "asset protection agent" to monitor him, had responsibilities taken away, removed from the computer systems and trainings, and, after complaining of discrimination and retaliation again, reprimanded him for not doing a task that was not possible from his wheelchair. *Id.* at 8–9, ¶¶ 35–38. After plaintiff returned from another medical leave, he was reassigned to the overnight shift and to a department that was not wheelchair accessible, even after he requested transfer to his former department as an accommodation. *Id.* at 10, ¶ 39. When he was out on yet another medical leave, in May and June 2019, he filed this lawsuit and applied to more than 30 job openings at Walmart for which he was not selected. *Id.*, ¶ 40–42. Plaintiff was terminated on August 2, 2019. *Id.*, ¶ 43.

Plaintiff's amended complaint claims disability discrimination under the ADA and the Colorado Anti-Discrimination Act ("CADA"), retaliation and discrimination for requesting medical leave under the Family Medical Leave Act ("FMLA"), and wrongful discharge in violation of Colorado public policy. *Id.* at 11–13, ¶¶ 44–72. Defendant moves to dismiss with prejudice plaintiff's public policy wrongful discharge claim and the part of his disability discrimination claims alleging hostile work environment. Docket No. 35 at 1.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alterations omitted).

### III. ANALYSIS

#### A. Wrongful Discharge Claim

Defendant seeks to dismiss plaintiff's claim that he was wrongfully discharged in violation of public policy because Colorado courts disallow such actions when the statute on which the public policy claim is based already provides a remedy for wrongful discharge. Docket No. 35 at 6–7.

"Absent an express contract providing otherwise, Colorado law presumes that an employment relationship is terminable at will by either party." *Mullin v. Hyatt Residential Grp., Inc.*, 82 F. Supp. 3d 1248, 1251-52 (D. Colo. 2015) (citing *Martin Marietta Corp. v.*

*Lorenz*, 823 P.2d 100, 105 (Colo. 1992)). But Colorado courts recognize an exception to the at-will employment relationship if the termination stems from the employee's refusal to engage in illegal or unethical conduct or if the employee exercises a job-related right. *See Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 547, 551-52 (Colo. 1997) (characterizing the exception as "an employee, whether at-will or otherwise, should not be put to the choice of either obeying an employer's order to violate the law or losing his or her job" (citation omitted)). To plead a viable wrongful discharge in violation of public policy claim, plaintiff must allege that (1) he was employed by defendant, (2) defendant terminated his employment, and (3) defendant terminated his employment in retaliation for exercising a job-related right or performing a specific statutory duty, or in violation of a clearly expressed public policy. *See Brown v. Premier Roofing, LLC*, 173 F. Supp. 3d 1181, 1184 (D. Colo. 2016) (applying Colorado law).

The Colorado Supreme Court has held that, in determining whether a Colorado statutory right of action supplants a common law right, "statutes in derogation of the common law must be strictly construed, so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication." *Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 68 (Colo. 1995) (quoting *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1076 (Colo. 1992)). In *Brooke*, the Colorado Supreme Court, interpreting a prior version of the CADA, concluded that the legislature did not intend for CADA to provide the exclusive remedy for sex discrimination claims. 906 P.2d at 68–70.

Courts considering the CADA's preemptive effect in the context of wrongful discharge claims, however, have reached varied results. For instance, one court found *Brooke* dispositive in ruling that a wrongful discharge in violation of public policy claim brought under the CADA was not preempted. *Kennedy v. Colo. RS, LLC*, 872 F. Supp. 2d 1146, 1150–51 (D. Colo. 2012) (collecting cases). Other courts have reached similar conclusions. *See, e.g.*, *Marcantonio v. Comcast Cable Commc'ns Mgmt., LLC*, No. 14-cv-03313-KLM, 2016 WL 775689, at *3 (D. Colo. Feb. 29, 2016) (concluding, "the Court is inclined to agree with Plaintiff that a claim for wrongful discharge in violation of CADA is legally cognizable."); *Waters v. AXL Charter Sch.*, No. 12-cv-01384-LTB, 2013 WL 856524, at *10 (D. Colo. Mar. 7, 2013) ("Finally, I note that the law may allow a wrongful discharge claim based on violations of the CADA.").

Some courts have reached the opposite conclusion, some without relying on *Brooke*. *See, e.g.*, *Ybarra v. Comprehensive Software Sys., LLC*, No. 18-cv-01679-NYW, 2019 WL 266310, at *7 (D. Colo. Jan. 18, 2019) ("because CADA already provides a remedy for wrongful discharge, a free-standing wrongful discharge claim predicated on CADA violations is not otherwise available"); *Christen-Loper v. Bret's Elec., LLC*, 175 F. Supp. 3d 1213, 1219 (D. Colo. 2016) (discussing *Brooke* as not dispositive and concluding "that a wrongful discharge claim premised upon the CADA is not actionable"); *Spaziani v. Jeppesen Sanderson, Inc*., No. 14-cv-03261-REB-KMT, 2015 WL 5307971, at *3 (D. Colo. Sept. 11, 2015) (dismissing the plaintiff's wrongful discharge claim predicated on CADA violations because no such claim "may lie when the statute on which it is premised already provides a remedy for discriminatory or

retaliatory discharge"); *Gatuma v. Encore Elec., Inc.*, No. 12-cv-01611-MSK-MEH, 2012 WL 5354932, at *3–*5 (D. Colo. Oct. 30, 2012) (finding more persuasive the view that a wrongful discharge claim could not proceed when predicated on CADA violations because the CADA provided the exclusive remedy); *Endahl v. Vinnell Corp.*, No. 04-cv-00426-MSK-PAC, 2006 WL 57496, at *10 (D. Colo. Jan. 10, 2006) (same) (citing *Gamble v. Levitz Furniture Co.*, 759 P.2d 761 (Colo. App. 1988)).

Defendant relies on cases where courts have ruled that tort claims for wrongful discharge in violation of public policy were barred because the statute providing the requisite public policy already provides a wrongful discharge remedy. *See* Docket No. 35 at 6–7. Generally speaking, these cases turn on the following reasoning:

> The concept of a wrongful discharge evolved as an exception to the at-will employment doctrine and is designed to provide a remedy for unlawful adverse employment actions where no cause of action for breach of contract would lie. The Colorado courts have expressly disallowed its application where a statute provides a wrongful discharge remedy.

*Caspar v. Lucent Techs., Inc.*, 280 F. Supp.2d 1246, 1249 (D. Colo. 2003); *see also Gatuma*, 2012 WL 5354932, at *5; *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003); *Gamble*, 759 P.2d at 766.

Plaintiff relies on the *Kennedy* line of cases and counters that "it is plain that the CADA does not bar wrongful discharge tort claims." Docket No. 39 at 3. Plaintiff argues that the Colorado Supreme Court's holding in *Brooke* that "the creation of a private right of action by state statute does not bar pre-existing common law rights of action unless the legislature clearly expressed its intent to do so," 906 P.2d at 68, along with the CADA's 2013 amendments, which state, "[n]othing in this section precludes a

8

party from asserting any other available statutory or common law claims," Colo. Rev. Stat. § 24-34-405(7), mean that the plaintiff's claim is not barred. Docket No. 39 at 3–5. In reply, defendant explains that the CADA amendments mean that the CADA does not preclude any "available" statutory or common law remedy, but the wrongful discharge remedy is not "available" to plaintiff. Docket No. 40 at 2.

While the Court notes that the Colorado Supreme Court recently reaffirmed that the CADA is focused on liability rather than remedies, *see Elder v. Williams*, 477 P.3d 694 (Colo. 2020), which adds relevance to *Brooke*, the Court need not wade into the dispute of whether *Brooke* or *Gamble* is correct. This is because plaintiff's CADA wrongful discharge claim is barred because it is based on the same facts and subject to the same standards as his ADA claim. *See Ybarra*, 2019 WL 266310, at *7–*8.

To state a discrimination claim under the ADA (Claim 1), plaintiff must establish that he "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Justice v. Crown Cork & Seal Co., Inc.*, 527 F.3d 1080, 1086 (10th Cir. 2008). As stated above, to plead a wrongful discharge in violation of public policy claim under the CADA, plaintiff must allege that (1) he was employed by defendant, (2) defendant terminated his employment, and (3) defendant terminated his employment in retaliation for exercising a job-related right or performing a specific statutory duty, or in violation of a clearly expressed public policy. *See Brown*, 173 F. Supp. 3d at 1184. Therefore, as defendant argues, plaintiff's public policy wrongful

discharge claim is duplicative of his claim under the ADA. The Court in *Ybarra* confronted this issue in the Title VII context and held that, because the plaintiff's Title VII claims were subject to the same standards as his CADA claims and were based on the same facts, the "wrongful discharge claim based on the same underlying facts cannot stand." *Ybarra*, 2019 WL 266310, at *8. Title VII and the CADA "rise or fall together" and are therefore often analyzed together. *See Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) (unpublished). Similarly, Title VII and the ADA are often interpreted together. *See generally Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784 (10th Cir. 2020) (explaining the similarities and differences between Title VII and the ADA); *see also Lanman v. Johnson Cnty.*, 393 F.3d 1151, 1155 (10th Cir. 2004) (stating that Congress borrowed the ADA language from Title VII). As relevant here, claims brought under both the CADA and the ADA are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 399–400 (Colo. 1997) (adopting *McDonnell Douglas* in analyzing state employment discrimination claims under the CADA); *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) ("We apply the burden-shifting framework set forth in *McDonnell Douglas* . . . , to ADA discrimination claims.").

Here, the same facts giving rise to plaintiff's CADA claims are the same as those giving rise to his ADA claims. While plaintiff explains that his wrongful discharge claim is "premised on disability discrimination in violation of the CADA, a state statute, not the ADA, a federal one," plaintiff does not argue that the two claims are based on different

facts or not subject to the same burden-shifting framework. Docket No. 39 at 7. The Court does not find plaintiff's argument to be persuasive. *See Ybarra*, 2019 WL 266310, at *8 ("I find unconvincing [the] argument that [plaintiff's] wrongful discharge claim may proceed simply because it rests on violations of CADA as opposed to violations of Title VII."). Rather, because the ADA provides remedies for alleged employment-related discrimination, a wrongful discharge claim based on the same underlying facts cannot stand. Other courts have reached similar conclusions in the context of Title VII and other federal statutes. *See, e.g.*, *Caspar*, 280 F. Supp. 2d at 1248–49 (Title VII); *Stout v. Gyrodata, Inc.*, 560 F. App'x 765, 766–67 (10th Cir. 2014) (unpublished) (OSHA); *Hein v. AT&T Operations, Inc.*, No. 09-cv-00291-WYD-CBS, 2010 WL 5313526, at *6 (D. Colo. Dec. 17, 2010) (Sarbanes-Oxley Act); *Krauss*, 66 P.3d at 203 (FMLA). Therefore, the Court will grant defendant's motion and will dismiss the wrongful discharge claim.

### B. Hostile Work Environment Claim

Defendant also moves to dismiss plaintiff's hostile work environment claim. Docket No. 35 at 10. Defendant argues that plaintiff did not properly exhaust his administrative remedies because "none of Plaintiff's charges of discrimination lay a foundation for a hostile work environment claim." *Id.* at 11.

Before the Court can determine whether plaintiff exhausted his administrative remedies, the Court must first determine whether it can review the EEOC charges that defendant asks the Court to take judicial notice of. While plaintiff's complaint briefly mentions one June 7, 2018 charge filed with the EEOC, *see* Docket No. 33 at 6, ¶ 22,

defendant argues that the Court may take judicial notice of the June 7, 2018 charge, as well as a second charge that defendant states plaintiff filed on April 8, 2019 and amended on October 24, 2019, because they are public documents.  Docket No. 35 at 3–4, ¶¶ 5–10; *id.* at 4 n.3.

Generally, if a court considers matters outside the pleadings in deciding a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P 12(d).  However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim," the Court may consider it on a motion to dismiss.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Plaintiff frames this not as a question of judicial notice but rather as a question of the pleading requirements for exhaustion.  Plaintiff insists that, because exhaustion is an affirmative defense not a jurisdictional bar to suit,[3] he need not have pled exhaustion.  Docket No. 39 at 9–10.  Therefore, because affirmative defenses may only be considered on a Rule 12(b)(6) motion when the plaintiff admits all of the elements of the administrative defense, which plaintiff did not do here, the exhaustion issue is not before the Court, and the Court cannot consider the EEOC charges.  *Id.* at 10–11.

The Court disagrees with plaintiff's reasoning.  Because the first charge is

---

[3] For nearly forty years, the Tenth Circuit "held that exhaustion of administrative remedies is a 'jurisdictional prerequisite to suit.'"  *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (quoting *Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980)).  However, the Supreme Court recently held that "Title VII's charge-filing requirement is not of jurisdictional cast."  *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1850 (2019).  Rather, "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."  *Id.*

referenced in plaintiff's complaint and, as explained below, is critical to the Court's resolution of the plaintiff's claims, the Court may take judicial notice of it. *Martinez v. City & Cnty. of Denver*, No. 08-cv-01503-PAB-MJW, 2010 WL 1380529, at *1 (D. Colo. Mar. 31, 2010); *GFF*, 130 F.3d at 1384. Moreover, the Court may take judicial notice of the EEOC charges because they are administrative records. *Id.*; *see also Larson v. Conewango Prods.*, Corp., 2010 WL 1135987, at *5–6 (E.D. Cal. March 22, 2010) (taking judicial notice of EEOC charge); *Lunardini v. Mass. Mut. Life Ins. Co.*, 696 F. Supp. 2d. 149, 157 n.6 (D. Conn. March 1, 2010) ("Where a plaintiff alleges in the complaint that charges of discrimination have been filed with the . . . EEOC, those charges themselves may be considered either as matters referenced in the complaint or as public records subject to judicial notice." (internal quotations omitted)). Other courts have also taken judicial notice of EEOC charging documents. *See, e.g.*, *Ingle v. Ieros, LLC*, No. 18-cv-02759-LTB, 2019 WL 2471152, at *4 (D. Colo. June 13, 2019); *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) ("In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions.") (collecting cases); *Romens v. City of Colorado Springs*, No. 13-cv-01441-RM-KLM, 2015 WL 4607659, at *4 (D. Colo. Aug. 3, 2015).

Plaintiff also argues that, because the Court is to liberally construe charging documents and the allegations made in charging documents, it is inappropriate for the Court to consider only the three EEOC documents and not "whether any other documents [that plaintiff] filed with the EEOC would support [defendant's] exhaustion defense." Docket No. 39 at 10. Rather, because administrative exhaustion can be

"achieved through documents other than a formal EEOC charge, the defense could only be properly evaluated" by considering all of plaintiff's communications with the EEOC. *Id.* at 11 (citing *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)). The Tenth Circuit has held that, while "there are times in which a different filing, such as an intake questionnaire, can constitute a charge for certain purposes, the general rule remains that we typically look to the charge form if one exists. This is because the charge form, not a previous filing, is given to the employer to notify it of the potential claims against it and ordinarily determines the scope of the EEOC's investigation." *Jones v. Needham*, 856 F.3d 1284, 1290 (10th Cir. 2017) (internal citation omitted). Moreover, the Court's inquiry goes only to what is alleged in the charge, not a resulting investigation. *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (while the court liberally construes allegations in an EEOC charging document, "the <u>charge</u> must contain facts concerning the discriminatory . . . actions underlying each claim." (quoting *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007))); *see also Ingle*, 2019 WL 2471152, at *4 (the court need not consider additional documents). The Court therefore finds that it may consider the three EEOC charges that defendant has submitted with its motion to dismiss. *See* Docket Nos. 35-1, 35-2, 35-3.

Defendant seeks to dismiss "the part of [plaintiff's] disability discrimination claims alleging hostile work environment," Docket No. 35 at 1, because plaintiff failed to exhaust his administrative remedies, as "none of Plaintiff's charges of discrimination lay a foundation for a hostile work environment claim." *Id.* at 11.

Title I of the ADA, which incorporates Title VII's procedures, *see* 42 U.S.C.

§ 12117(a), requires a plaintiff to exhaust his administrative remedies before filing suit. *Jones*, 502 F.3d at 1183.  The first step of exhaustion is filing a charge with the EEOC. *Id.*  A plaintiff can fulfill this requirement by satisfying the EEOC's "minimum requirements for a charge" and "the circumstances of the case indicate that [the plaintiff] intended to activate the administrative process." *Id.*  The EEOC has broad discretion to determine the content and form of the charge.  *See* 42 U.S.C. § 2000e–5(b).  In addition to requiring that a charge be written, signed, and verified, 29 C.F.R. § 1601.9, EEOC regulations state that a charge "should contain," among other things, "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices."  *Id.* at § 1601.12(a).  But even if a charge fails to contain the specified information, it may still be sufficient, provided it is "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  *Id.* at § 1601.12(b); *see also Jones*, 502 F.3d at 1184.

"A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter."  *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (citation omitted); *Smith*, 904 F.3d at 1164 (a plaintiff's claim in court "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC" (citation omitted)).  The purpose of the exhaustion requirement is "to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the

claim in furtherance of Title VII's goal of securing voluntary compliance." *Douglas v. Norton*, 167 F. App'x 698, 711 (10th Cir. 2006) (unpublished).  Therefore, while the court must "'liberally construe' the plaintiff's allegations in the EEOC charge, 'the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim.'" *Smith*, 904 F.3d at 1164 (quoting *Jones*, 502 F.3d at 1186).

In certain circumstances, however, a plaintiff may seek relief for allegations that were not included in the EEOC charge, so long as the new claims are "reasonably related to the allegations of the EEOC charge." *Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 667 (10th Cir. 2004) (unpublished).  "The ultimate question is whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge." *Smith*, 904 F.3d at 1164 (alteration omitted).  This is a "lenient" pleading standard.  *Azu v. Sam's Club, Inc.*, No. 18-cv-01956-RBJ, 2019 WL 5577948, at *5 (D. Colo. Oct. 29, 2019).  Further, unlike a complaint, an EEOC charge need not meet the plausible pleading standards of Rule 8 of the Federal Rules of Civil Procedure.  *Jones*, 856 F.3d at 1291–92.

Here, defendant claims that plaintiff failed to exhaust his administrative remedies for his hostile work environment claim because his EEOC charges did not provide "facts indicating that his workplace was permeated with ridicule, intimidation or insult based on his protected status."  Docket No. 35 at 11–12.  Defendant states that the words "hostile work environment," "harassment," and "abuse" do not appear in the charges. *Id.* at 12.  In response, plaintiff explains that a charge need only "describe generally the

alleged discrimination in order to give notice of an alleged violation to the charged party." Docket No. 39 at 11 (quoting *Jones*, 856 F.3d at 1291). Allegations are sufficient to exhaust if the facts alleged "would prompt an investigation of the claim." *Id.* (quoting *Jones*, 856 F.3d at 1290). Furthermore, plaintiff argues that, at the EEOC charge stage, the motion to dismiss "plausibility standard does not apply to allegations of hostile work environment" and that a hostile work environment claim is exhausted if a charging party checks the boxes for discrimination and retaliation and provides general allegations. *Id.* at 12.

Defendant relies on *Hunt v. Riverside Transp., Inc.*, 539 F. App'x 856 (10th Cir. 2013) (unpublished), and *Hartwell v. Sw. Cheese Co., LLC*, 276 F. Supp. 3d 1188, 1203–04 (D.N.M. 2016). In both of these cases, the court held that plaintiffs failed to exhaust their administrative remedies regarding their hostile work environment claims. In these cases, plaintiffs failed to give any notice that they sought a hostile work environment claim. In *Hunt*, the Tenth Circuit found that "Hunt's hostile work environment claim could not reasonably be expected to follow the allegations contained in his [EEOC] charge" because he had "not specif[ied] that he was complaining of a hostile work environment nor did the narrative portion of his charge adequately describe a hostile work environment." 539 F. App'x at 859. Although a plaintiff need not use the exact words "hostile work environment," the plaintiff in *Hunt* had failed to even assert that he had been "subjected to severe racial harassment." *Hunt v. Riverside Transp., Inc.*, 2013 WL 1497805, at *10 (D. Kan. Apr. 11, 2013). Similarly, in *Hartwell*, the plaintiff merely alleged that she had been passed her over for a "younger, [w]hite

17

[e]mployee," and defendant had suspended her for having a tongue ring. 276 F. Supp. 3d at 1204. These allegations, the court held, "would not lead an investigator to find racial or sexual harassment." *Id.* at 1204–05.

Here, while plaintiff did not use the words "hostile work environment," he alleged, among other things, that he was forced to tour the store when he was running low on oxygen and lost consciousness as a result, was yelled at repeatedly by Mr. Hedges, sometimes in front of his co-workers, was denied wheelchair access to parts of the store, was forced to set up his department at 4:00 AM, five hours earlier than usual, had his wheelchair unplugged and made inoperable, had his car taillights smashed, was threatened to be sent home, was closely monitored, and was falsely accused of stealing. Docket No. 35-1 at 2; Docket No. 35-2 at 1–2. In contrast to *Hunt* and *Hartwell*, the Court finds these allegations sufficient to meet the "lenient" pleading standards necessary to indicate that plaintiff sought to pursue a hostile work environment claim. *See Azu*, 2019 WL 5577948, at *5. Considering the language plaintiff used and the repeated actions he alleged, a hostile work environment claim "would fall within the scope of the administrative investigation which can reasonably be expected to grow out of" plaintiff's EEOC charge. *See Mitchell*, 112 F. App'x at 667; *Azu*, 2019 WL 5577948, at *7; *Tastan v. Los Alamos Nat'l Sec., LLC*, 2019 WL 2163991 (D.N.M. May 17, 2019) (finding that plaintiff's allegations in her amended complaint concerning a hostile work environment were within the scope of her EEOC charge, where she stated merely that she was "subjected to different terms and conditions" and "harassed through constant monitoring and harsher treatment").

Therefore, the Court will deny defendant's motion to dismiss on this ground, and plaintiff may proceed with his hostile work environment disability discrimination claim.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Partial Motion to Dismiss with Prejudice [Docket No. 35] is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that plaintiff's fourth claim is **DISMISSED** with prejudice.

DATED March 17, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge